UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AU ELECTRONICS, INC., et al.,<br>  Plaintiffs, | ) | Case No. 13 C 5947 |
| | ) | |
| v. | ) | Judge Gary Feinerman |
| | ) | |
| HARLEYSVILLE GROUP, INC., et al.,<br>  Defendants. | ) | Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

As stated in the Order of April 22, 2014 [dkt 69], the court has re-reviewed *in camera* the documents sought in Plaintiffs' Motion to Compel [dkt 53] in light of defendants' response to plaintiffs' motion [dkt 80], and plaintiffs' supplemental brief [dkt 81]. The court reconfirms its decision to deny the motion.

## BACKGROUND

In this lawsuit, plaintiffs AU Electronics, Inc., *et al.* (collectively, "AU"), seek a declaratory judgment that an insurance policy issued by defendants Harleysville Group, Inc., *et al.* (collectively, "Harleysville"), covers certain claims asserted in lawsuits that Sprint Nextel Corporation and T-Mobile USA, Inc., filed against AU in November and December 2012. (Compl.) [Dkt 1.]

Harleysville has produced 943 pages of documents in response to AU's document requests. (Pls.' Mot. Compel at 2.) [Dkt 53.] Harleysville has withheld or redacted portions of a small

number of documents as to which it claims attorney-client privilege and/or work-product protection.[1] AU contests Harleysville's claims of privilege and protection, particularly with respect to certain "claims notes" (Bates nos. HAR 001 through HAR 005).[2] Claims notes are entries in a computer log notation system that includes entries relating to Harleysville's handling of AU's claim. Harleysville has produced most of the log, but the text of certain notes was redacted. The name of the person making the entry is shown on the log produced by Harleysville, as well as the date and time of the entry, even with respect to the redacted notes.

After receiving briefing on the motion and reviewing the disputed documents and redactions in camera, this court denied the motion to compel for reasons stated on the record on April 22, 2014. (Order, April 22, 2014.) [Dkt 69.] Harleysville was required, however, to provide additional factual support for its assertion of confidentiality with respect to the claims notes. (*Id.*) Harleysville submitted a supplemental affidavit by Sharon McGoldrick, whose title is Claims Manager-Commercial for Nationwide Mutual Insurance Company, the owner of Harleysville. (Defs.' Resp., Ex. 1, Suppl. Aff. Sharon McGoldrick ¶ 2.) [Dkt 79 -1.] She states that, when a claim file is opened, the claim number is given to certain claims representatives assigned to handle the claim. (*Id.* ¶ 6.) Access to the notes and permission to make entries in the notes are restricted by password and by the use of the claim number. (*Id.* ¶¶ 4-7.) She states that she believes that no one had access to the disputed claims notes other than the persons listed in her original affidavit as having authority to make final decisions on claims or who had a necessary advisory role for such decisions. (*Id.* ¶20.)

---

[1] Many of the documents on Harleysville's original privilege log were eventually produced.

[2] Document bates numbered HAR 852 is an email chain the substance of which is reflected in the claims notes.

In its response, AU requested that the court reconsider its decision with respect to the claims notes. (Pls.' Suppl. Br.) [Dkt 81.] Having reviewed the parties' latest submissions and re-reviewed the disputed documents, the court confirms the decision to deny the motion. The documents are protected by both attorney-client privilege and work-product protection.

## DISCUSSION

Attorney-client privilege and work-product protection are different grounds for withholding otherwise discoverable material. In this case, the parties agree that assertions of attorney-client privilege are governed by Illinois law while assertions of work-product protection are governed by federal law. Fed. R. Evid. 501. The general principles of privilege and work-product protection are well-established, but their application to a particular communication or document depends on the specific factual circumstances in which the document was created or the communication made and maintained.

Issues of attorney-client privilege and work-product protection create some interesting challenges in lawsuits between insurers and insureds, because, as a number of courts have observed, insurers are in the business of reviewing and allowing or denying claims. Of course, litigation between insurers and insureds usually involves claims for which the insurer has denied coverage.

Lawyers may play a number of roles in the decision to deny a claim, which, for an insurance company, is a business decision. As a general proposition, the fact that a lawyer is part of a business decision does not, by itself, cloak the communications relating to that decision with privilege. That does not mean, however, that there can be never be any privilege for a communication with a lawyer during the course of the decision. It depends on the facts, including the nature of the communication

3

and the role of the lawyer. In Illinois, communications between an insurer and its coverage counsel generally are privileged. *Ill. Emasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 913 N.E.2d 1102, 1106-8 (Ill. App. 2009). "Moreover, the fact that the declaratory judgment action may be filed later does not mean that the coverage issues may not arise from the outset of a dispute." *Id.* at 1108.

Under Illinois law, privileged communications lose their privileged status if disseminated to persons not in the control group. The Illinois Supreme Court defined the control group in *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E. 2d 250, 257-58 (Ill.1982) (internal citations omitted):

> [A]s a practical matter, the only communications that are ordinarily held privileged under this test are those made by top management who have the ability to make a final decision, rather than those made by employees whose positions are merely advisory. We believe that an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority is properly within the control group. . . . Thus, if an employee of the status described is consulted for the purpose of determining what legal action the corporation will pursue, his communication is protected from disclosure. This approach, we think, better accommodates modern corporate realities and recognizes that decisionmaking within a corporation is a process rather than a final act.

The assertion of work-product protection likewise depends on whether the facts demonstrate that the material was created in anticipation of litigation rather than as a customary part of a business which in the ordinary course involves litigation. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir.1996).

The background of this dispute is somewhat different from the conventional insurer-insured dispute because AU first made a demand for coverage in a letter dated July 31, 2013, more than six months after the Sprint and T-Mobile lawsuits were filed. (Compl. ¶¶ 3-4, 11.) AU demanded that Harleysville accept or respond to its tender of defense and indemnity within 14 days after the notice,

that is, by August 14, 2013. (*Id.* ¶ 11.) AU filed this lawsuit on August 20, less than a week after

its deadline for response, and less than three weeks from first notifying Harleysville of its demand

for coverage.

AU argues that no work-product protection can be asserted by Harleysville for any materials

prepared before the coverage denial was communicated to AU, citing *Lagestee-Mulder, Inc. v.*

*Consolidated Ins. Co.*, No. 09 C 7793, 2010 WL 4781461 (N.D. Ill. Nov. 17, 2010). (Pls.' Mot.

Compel at 9.) As a general proposition it makes sense that an insurer is unlikely to be working in

anticipation of a specific threat of litigation prior to communicating a denial. Looking at the cases

upon which the *Lagestee-Mulder* decision relies, however, suggests that the general rule should not

be interpreted to set a hard and fast time line. For example, *Lagestee-Mulder* cites *Country Life Ins.*

*Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 390565 at *7 (C.D. Ill. Jan. 31, 2005),

which in turn relies on the Seventh Circuit's opinion in *Logan*. Notably, the Seventh Circuit in

*Logan* did not create a rule that documents predating the denial of the claim can never be work

product. It found that documents created after the denial were, in fact, protected work product.

*Logan*, 96 F.3d at 977. But that is not to say that no documents created prior to the denial can ever

be work product. The important distinction was drawn by the Seventh Circuit, quoting its earlier

decision in *Binks Mfg. Co. v. Natl. Presto Indus., Inc.*, 709 F. 2d 1109 (7th Cir. 1983):

> While much of the paperwork generated by insurance companies is prepared with an
> eye toward a possible legal dispute over a claim, it is important to distinguish
> between an investigative report developed in the ordinary course of business as a
> precaution for the remote prospect of litigation and materials prepared because some
> articulable claim, *likely* to lead to litigation has arisen.

*Logan*, 96 F.3d at 977 (alterations and quotations omitted; emphasis in original).

This case is factually different from any of the cases just discussed and different from the

conventional case. Here, the filing of this lawsuit apparently *preceded* the insurer's final decision on how to respond to the demand. As noted above, AU filed this lawsuit less than three weeks after making its initial coverage demand. The documents show that Harleysville was still in the course of making its coverage decision at that time. Given the filing of the complaint against it, Harleysville had no choice but to retain counsel to represent it in the litigation. AU argues that "the Insurer failed to communicate its ultimate denial of the coverage until the Insurer filed its answer on September 23, 2013." (Pls.' Mot. Compel at 8.) Under AU's theory, there could be no work-product protection for the attorneys' work in preparing the answer to the complaint, which cannot possibly be correct.

AU's coverage demand related to two lawsuits against AU that were already six months old. In that context, its demand that Harleysville respond in two weeks does not suggest merely a remote possibility of future litigation, but an articulable claim likely to lead to litigation if coverage is not forthcoming, which is exactly what happened just three weeks later.

The claims notes at issue (HAR 003 and 004) are dated between August 12 and September 5, 2013. Harleysville did not redact any notes that relate to its coverage decision. It redacted only those reflecting the consultation with and advice of its outside coverage counsel, John Piegore, who is one of Harleysville's counsel of record in this lawsuit. The notes reflect a decision to send the claim out for coverage review by outside counsel, and outside counsel's advice on responding to the demand. They do not deal with the business decision to accept or deny the claim but rather how to respond to the threat implicit in AU's demand letter.

AU contends there was a "monumental reversal by Harleysville on the eve of the lawsuit" and that one of Harleysville's employees made a "knowing misrepresentation" to AU's president.

(Pls.' Suppl. Br. at 2.) AU cites the following: a note on August 7 made by Field Consultant Michelle Bosse in which Ms. Bosse states that after discussion with Commercial Claims Manager Barry Brodzinski she will prepare a denial of coverage; a note by Mr. Brozinski that he agrees and is forwarding the denial to Theresa Funaro (Technical Director-Claims) for review; a note on August 12 by Ms. Bosse that she has composed a "ROR" [Reservation of Rights]; a note by Mr. Brodzinski on August 13 that he will approve it; and then a note reporting a conversation between AU's president and Ms. Bosse on August 14, in which Ms. Bosse explained that the demand had been sent out for coverage review, but explaining that "it does not appear our coverage will respond." (*Id.* at 2, 4-5.) The next note, dated August 22, reflects that AU has filed this lawsuit.

In camera review of the redacted notes on August 12 and 13 dispels the mystery. The notes reflect a decision to seek coverage counsel's opinion and advice from coverage counsel about how to deal with the implicit threat of litigation. Before Harleysville could respond to AU with its final position, this lawsuit was filed.

The court finds that the notes are covered by both the attorney-client privilege and work-product protection. Citing *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 6 (N.D. Ill. 1980), AU argues that the notes cannot be attorney-client privileged because they are "memos to the file" and not "communications." (Pls.' Suppl. Br. at 3.) Here, however, the notes summarize the communications to and from counsel and producing them would disclose the substance of the communication. *See U.S. v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990). The affidavits of Ms. McGoldrick satisfactorily explain that the notes are protected from general dissemination and limited to persons properly considered within the control group under Illinois law. The notes are work-product protected because they were prepared in anticipation of the litigation that was filed by

AU a week later. Furthermore, they are "core" work product because they reflect coverage counsel's "mental impressions, conclusions, opinions, or legal theories," and as such are protected from disclosure under Fed. R. Civ. P. 26(b)(3)(B).

## CONCLUSION

For the foregoing reasons, the court reconfirms the decision to deny Plaintiffs' Motion to Compel.

Geraldine Soat Brown
United States Magistrate Judge

DATE: May 28, 2014